IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:11-CV-35-FL

| | |
|---|---|
| DEFENDERS OF WILDLIFE and NATIONAL WILDLIFE REFUGE ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; JOHN F. SULLIVAN, III, Division Administrator, Federal Highway Administration; and EUGENE A. CONTI, JR., Secretary, North Carolina Department of Transportation, <br><br> Defendants. | ORDER |

This matter is before the court on motion to intervene of Cape Hatteras Electric Membership Corporation ("CHEMC"), filed October 31, 2011. Defenders of Wildlife and National Wildlife Refuge Association (collectively, "plaintiffs"), filed response on November 15, 2011, as did North Carolina Department of Transportation ("NCDOT"), Eugene A. Conti, Federal Highway Administration ("FHWA"), and John F. Sullivan (collectively, "defendants"). The time for reply has passed. Accordingly, the issues raised are ripe for review. For the following reasons, CHEMC's motion to intervene pursuant to Federal Rule of Civil Procedure 24 is GRANTED.

## STATEMENT OF THE CASE

Plaintiffs filed complaint on July 1, 2011, and allege in five claims various violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and Section 4(f) of the Department of Transportation Act of 1966 ("Section 4(f)"), 49 U.S.C. § 303 and 23 U.S.C. § 138. Plaintiffs seek declaratory judgment, injunctive relief, order of vacatur, costs, and reasonable attorneys' fees. On September 6, 2011, the state defendants answered, followed on September 9, 2011, by the federal defendants.

The parties filed Rule 26(f) joint report and motion to dispense with mediation on October 19, 2011. By order entered November 1, 2011, the court allowed said motion and adopted the parties' schedule for disposition of the case. The schedule contemplates, *inter alia*, defendants' filing of the administrative record on or before January 31, 2012, and it establishes deadlines for plaintiffs' motion and defendants' cross-motions for summary judgment.

On October 31, 2011, CHEMC filed the instant motion to intervene pursuant to Rule 24. Plaintiffs responded in opposition. Defendants take no position on the motion but ask that if CHEMC is allowed to intervene, the court impose certain conditions on its participation, to which CHEMC agrees. CHEMC has not filed reply, and the time for doing so has expired.

## STATEMENT OF FACTS

Plaintiffs allege as follows: Bodie and Hatteras Islands are coastal barrier islands of North Carolina's Outer Banks. Pea Island National Wildlife Refuge (the "Refuge"), established in 1938, occupies the northern end of Hatteras Island and is home to variegated wildlife. Construction of the highway that runs through the Refuge, NC-12, began in the 1950s following grant of easement from the United States Secretary of the Interior to the state of North Carolina.

2

In 1962, NCDOT built Herbert C. Bonner Bridge, which spans Oregon Inlet and connects Bodie and Hatteras Islands. The bridge is nearing the end of its service life, and a process began in 1990 to investigate alternatives for replacement. NCDOT and FHWA issued a Draft Environmental Impact Statement ("DEIS") in 1993, which included initial assessment of several alternatives.

In September 2008, NCDOT and FHWA issued a Final Environmental Impact Statement ("FEIS"), detailing several alternatives for replacement of Bonner Bridge. Among the alternatives considered were various plans for a replacement bridge to run close and parallel to the current Bonner Bridge (the "parallel bridge alternatives"). Also described were variations of a plan to build a longer replacement bridge "that would bypass the Refuge and erosion 'hot spots' entirely, by traveling through Oregon Inlet, then passing to the west of the Refuge through Pamlico Sound, and making landfall at various proposed locations south of the Refuge at the village of Rodanthe," (the "Pamlico Sound alternatives"). Compl. 15.

In documents issued October 2009 and May 2010, namely a Revised Final Section 4(f) Evaluation and an Environmental Assessment, defendants identified a new preferred alternative that, plaintiffs allege, ignored environmental and legal concerns. The preferred alternative involved construction of a replacement bridge parallel to Bonner Bridge, with design and location left to the construction contractor. However, this new alternative failed to plan for maintaining a transportation route from the new bridge's southern terminus, through the Refuge, to Rodanthe. Plaintiffs allege: "Defendants opted to ignore the problem of what to do with NC-12 and segmented the Project in order to move forward with a replacement for Bonner Bridge." Compl. 20.

On December 20, 2010, defendants issued a Record of Decision that approved for implementation the new "Parallel Bridge Corridor with NC 12 Transportation Management Plan

3

Alternative (Selected)" (the "selected alternative"). The selected alternative contemplates construction of a 2.5-mile bridge parallel to the current Bonner Bridge. Plaintiffs allege that construction of this bridge will necessitate construction and/or maintenance of a transportation route through the entire length of the Refuge, which route will have significant environmental effects.

Cape Hatteras Electric Membership Corporation ("CHEMC") moves to intervene and alleges as follows: CHEMC is a cooperative, formed for the purpose of providing low cost electric power service, on a non-profit basis, to approximately 7,500 consumers of Hatteras Island, North Carolina. CHEMC currently maintains a 115kV electric power transmission line on Bonner Bridge and through the Refuge on Highway NC-12. CHEMC is the sole power service provider for Hatteras Island and Ocracoke Island, and no commercial providers service the area. CHEMC entered into a utility agreement with NCDOT whereby it has agreed to pay for and maintain a 115kV transmission line along the proposed new bridge.

## DISCUSSION

A. Intervention of Right

1. Standard

CHEMC moves to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) and therefore must show: 1) the motion to intervene is timely; 2) CHEMC possesses a direct and substantial interest in the subject matter of the litigation; 3) the denial of intervention would impair CHEMC's ability to protect that interest; and 4) CHEMC's interest is not adequately represented by existing parties. Houston General Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999); Richman v. First Woman's Bank, 104 F.3d 654, 659 (4th Cir. 1997). "A would-be intervenor bears the burden of demonstrating to the court a right to intervene." Richman, 104 F.3d at 658. Nevertheless,

"liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)).

Plaintiffs assert that CHEMC cannot satisfy two of the above requirements, namely that 1) it has a direct and substantial interest in the subject matter of the action, and 2) no existing party adequately represents the interest.

2. Analysis

CHEMC must first show that its motion to intervene was timely filed. The case is in its early stages, where the Administrative Record is not due until January 31, 2012, and plaintiffs' motion for summary judgment is not due until April 20, 2012. Plaintiffs, furthermore, do not contend that CHEMC's motion was untimely. Accordingly, CHEMC timely filed motion and has satisfied the first requirement of Rule 24(a)(2) analysis.

CHEMC must next show that it possesses a direct and substantial interest in the subject matter of the litigation. Richman, 104 F.3d at 659. A movant seeking to intervene as a matter of right must demonstrate that it has a "significantly protectable interest" in the subject matter of the action. Donaldson v. United States, 400 U.S. 517, 531 (1971). In Teague v. Bakker, the Fourth Circuit found that movants had a sufficient interest in part because they "[stood] to gain or lose by the direct legal operation of the district court's judgment on [the plaintiff's] complaint." Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991).

The court must first determine the "subject matter of the litigation." Plaintiffs allege in claims one through four of the complaint that defendants violated the NEPA by 1) failing to adequately assess and disclose environmental impacts in the FEIS and Environmental Assessment,

5

2) unlawfully segmenting the overall project, 3) failing to rigorously examine reasonable alternatives, and 4) failing to prepare a supplement to the FEIS. In claim five, plaintiffs allege violations of Section 4(f) of the Department of Transportation Act of 1966, codified in 49 U.S.C. § 303 and 23 U.S.C. § 138.

Plaintiffs contend that the NEPA is procedural and the subject matter of this litigation is therefore "procedural in nature and unique to [d]efendants." Pls.' Mem. 3. Yet plaintiffs' determination neglects their Section 4(f) claim. Section 4(f) permits the Secretary of Transportation to approve a transportation project requiring the use of publicly owned land of a wildlife and waterfowl refuge only if, *inter alia*, "there is no prudent and feasible alternative to using that land." 49 U.S.C. § 303(c)(2). Plaintiffs maintain that prudent and feasible alternatives to defendants' planned use of the Refuge exist. Compl. 39, ¶ 101. State defendants deny this allegation, State Defs.' Answer 21, ¶ 101, as do federal defendants. Fed. Defs.' Answer 24, ¶ 101. CHEMC, in answer attached to its motion to intervene, also denies plaintiffs' allegation that feasible alternatives exist. CHEMC Answer 14, ¶ 101.

Accordingly, determination of whether a prudent and feasible alternative exists, a substantive determination, is necessary to resolution of plaintiffs' Section 4(f) claim and is therefore a substantial part of the subject matter of this litigation.

Next, the court must determine whether CHEMC has a direct and substantial interest in the subject matter as defined. CHEMC argues it has a substantial economic interest, because if plaintiffs prevail, the replacement bridge will either be abandoned or delayed. If abandoned, CHEMC may face heightened costs in delivering power to Hatteras and Ocracoke Island. If delayed, the Bonner

Bridge may fail in the interim, resulting in power outages for the islands' residents and substantial repair costs for CHEMC.

The Fourth Circuit allows that a movant's economic interest in the subject matter of the litigation may support intervention, JLS, Incorporated v. Pub. Serv. Comm'n of W. Va., 321 Fed. App'x 286, 290 (4th Cir. 2009) (quoting with approval Utahns for Better Transp. v. United States Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002) ("[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.")). The subject matter of this litigation encompasses the issue of whether feasible alternatives to the planned use of the Refuge exist. CHEMC has an interest in this issue's resolution, where disposition in plaintiffs' favor may cause CHEMC substantial economic harm. Accordingly, CHEMC has a direct and substantial interest in the subject matter of this litigation and satisfies the second requirement for intervention as of right.

CHEMC must next demonstrate that denial of intervention would impair its ability to protect its interest. Richman, 104 F.3d at 659. Plaintiffs have not presented argument that CHEMC fails to satisfy this requirement. CHEMC asserts that its knowledge of the costs and needs associated with providing electricity to Cape Hatteras exceeds that of defendants. Absent CHEMC's intervention, the court would not have benefit of CHEMC's unique understanding, and the materials available to the court in determining the feasability of alternatives may be incomplete. Accordingly, CHEMC's ability to protect its interest would be impaired.

Finally, CHEMC must satisfy the fourth requirement for intervention as of right by showing that its interest is not adequately represented by the existing defendants in this case. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that

its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976); see also JLS, Inc. v. Pub. Serv. Comm'n of W. Virginia, 321 F. App'x 286, 289 (4th Cir. 2009) (unpublished per curium opinion). Nonetheless, the applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. UMWA, 404 U.S. 528, 538 n. 10 (1972).

Here, CHEMC's objective is closely aligned with that of the existing defendants. All seek determination that the existing defendants complied with the NEPA and Section 4(f), and that the selected alternative for replacing Bonner Bridge should proceed. However, CHEMC maintains that the existing defendants do not adequately represent its interests, where CHEMC's knowledge of the costs of providing electricity to Cape Hatteras exceeds that of the existing defendants, and where the existing defendants may reach settlement with plaintiffs that is ultimately unfavorable to CHEMC.

In JLS, Inc., the Fourth Circuit considered the movant's superior knowledge on case-specific issues in finding nonfeasance. JLS, Inc., 321 Fed. App'x at 290. Similarly here, CHEMC has a greater understanding of the expense of providing electricity to Cape Hatteras than any existing defendants. It can therefore argue more vigorously how such expenses affect the determination regarding feasible alternatives. In addition, although CHEMC and the existing defendants seek similar outcomes, their interests are not directly aligned. CHEMC will advocate primarily for its approximately 7,500 customers who live and work on Hatteras Island. In contrast, the position of the existing defendants, federal and state government agencies and administrators, "is defined by the public interest, [not simply] the interests of a particular group of citizens." Feller, 802 F.2d at 730. Therefore, as CHEMC argues in memorandum, the existing defendants could settle this case in a

8

Case 2:11-cv-00035-FL   Document 37   Filed 01/24/12   Page 8 of 10

manner that would harm CHEMC's interests. See JLS, Inc., 321 Fed. App'x at 290. Accordingly, CHEMC has satisfied its minimal burden of showing that representation of its interests, absent intervention, may be inadequate.

CHEMC has satisfied all four requirements under the Rule 24(a) analysis and is therefore entitled to intervene as of right.

B.     Permissive Intervention

Even if CHEMC had not satisfied the requirements for intervention as of right, the court would grant its alternative request for permissive intervention. Pursuant to Rule 24(b)(1), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As stated above, CHEMC shares a common defense with defendants – namely that no feasible alternatives to the selected alternative exist. CHEMC's intervention will not unduly delay this action, where plaintiffs' motion for summary judgment is not due until April 20, 2012. Further, CHEMC's intervention will not lead to undue prejudice and will allow the undersigned to proceed fully-informed.

CONCLUSION

For the foregoing reasons, CHEMC's motion to intervene is GRANTED, and CHEMC is allowed to intervene in this action as of right. Where CHEMC's intervention may affect the case schedule, proposed in Rule 26(f) joint report and adopted by the undersigned on November 1, 2011,

9

the parties are DIRECTED to confer and submit to the court within fourteen (14) days of entry of this order a supplement proposing any necessary changes to the current schedule.

SO ORDERED, this the 23rd day of January, 2012.

_____
LOUISE W. FLANAGAN
United States District Court Judge